1  Abigail Stecker Romero (SBN 284534)
   aromero@kcozlaw.com
2  KABAT CHAPMAN & OZMER LLP
   333 S. Grand Avenue, Suite 2225
3  Los Angeles, CA 90071
   Telephone: (213) 493-3980
4  Facsimile: (404) 400-7333
5
   *Attorneys for Defendant*
6

7
                   **UNITED STATES DISTRICT COURT**
8                  **NORTHERN DISTRICT OF CALIFORNIA**

9  | MICHAEL GONZALES, et. al., | Case No. 20-cv-02689-EMC |
10 | Plaintiff, | **NOTICE OF MOTION AND MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404; MEMORANDUM OF POINTS AND AUTHORITIES** |
   | vs. | |
11 | | |
12 | CHARTER COMMUNICATIONS, LLC, | |
13 | Defendant. | [*Declaration of Abigail Stecker Romero; Declaration of Seepa Lee; and Proposed Order filed concurrently herewith*] |
14 | | |
15 | | Complaint Filed: April 17, 2020 |
16 | | |
17 | | Honorable Edward M. Chen |
18 | | **Hearing** |
   | | Date:     August 13, 2020 |
19 | | Time:     1:30 p.m. |
   | | Location: Courtroom 5 |

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE THAT** on Thursday, August 13, 2020, at 1:30 p.m. in Courtroom 5 of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Charter Communications, LLC will and hereby does, move the Court for an Order transferring this proceeding to the District Court for the Central District of California pursuant to 28 U.S.C. § 1404 and Ninth Circuit authority.

This Motion is based upon this Notice of Motion and Motion to Transfer Venue, the accompanying Memorandum of Points and Authorities, the Declaration of Abigail Stecker Romero, the Declaration of Seepa Lee, the complete file and record in this action and such further and other matters as the Court may allow.

Dated: July 2, 2020

                                      KABAT CHAPMAN & OZMER LLP

                                      By: */s/ Abigail Stecker Romero*
                                              Abigail Stecker Romero

                                      *Attorneys for Defendant*

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 2

II. STATEMENT OF RELEVANT FACTS ............................................................. 2

   A. Plaintiffs Who Live and Work in the Central District File Suit in This Court. .................... 2

   B. Plaintiffs File an Amended Complaint to Add Two Plaintiffs From the Northern District. 4

   C. Charter's Operations in California Are Based in the Central District. ................................ 4

III. ARGUMENT AND CITATION OF AUTHORITY ............................................ 5

   A. Lawsuits May Be Transferred for the Convenience of Parties in the Interests of Justice.... 5

   B. This Proceeding Could Have Initially Been Brought in Central District of California. ...... 5

   C. All Section 1404 Factors Strongly Support Transfer to the Central District. ...................... 6

      1. Plaintiffs' Choice of Forum Was the Result of Improper Forum Shopping. ............... 7

      2. The Central District Is More Convenient for the Parties. ............................................ 9

      3. The Central District Is More Convenient for Witnesses. ............................................ 9

      4. The Majority of Relevant Evidence is Located in the Central District. .................... 10

      5. The Central District is Familiar with Applicable Law. ............................................. 11

      6. Consolidation with Other Claims is Irrelevant. ......................................................... 11

      7. The Central District Has a Greater Local Interest in the Controversy. ..................... 11

      8. The Central District Is Less Congested and Provides an Equivalent Path to Trial. ... 12

IV. CONCLUSION .................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases**   Page(s)

*Baker v. Bayer Healthcare Pharma., Inc.*,
  No. 13–cv–00490–THE, 2015 WL 4456085 (N.D. Cal. 2015) ................................................12

*Carolina Cas. Co. v. Data Broadcasting, Co.*,
  158 F. Supp. 2d 1044 (N.D. Cal. 2001) ..................................................................................7

*Congoleum Corp. v. DLW Aktiengesellschaft*,
  729 F.2d 1240 (9th Cir. 1984) ................................................................................................7

*Ferrick v. Spotify USA Inc.*,
  No. 15-09929 BRO, 2016 WL 11623778 (C.D. Cal. Oct. 26, 2016) ..............................8, 10

*Forrand v. Fed. Exp. Corp.*,
  2008 WL 276389 (N.D. Cal. 2008) .........................................................................................8

*Gupta v. Perez*,
  No. 5:14–cv–01102 HRL, 2014 WL 2879743 (N.D. Cal. June 24, 2014) ...............................6

*Harris v. LSP Prods. Grp., Inc.*,
  No. CV 18-3091 FMO, 2018 WL 6264993 (C.D. Cal. Nov. 13, 2018) ...................8, 9, 11, 12

*Hawkins v. Gerber Prod. Co.*,
  924 F. Supp. 2d 1208 (S.D. Cal.2013) ...................................................................................8

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) .............................................................................................7, 8

*Metz v. The United States Life Ins. Co.*,
  674 F. Supp. 2d 1141 (C.D. Cal. 2009) .......................................................................7, 9, 10

*Mitek Sys., Inc. v. U.S.A.A.*,
  No. 19-cv-07223-EMC, 2020 WL 1922635 (N.D. Cal. Apr. 21, 2020) (J.,
  Chen) ............................................................................................................................5, 8, 10

*Nyulassy v. Lockheed Martin Corp.*,
  No. 5:12–CV–1182 EJD, 2012 WL 2906572 (N.D. Cal. July 16, 2012) .................................6

*Perez v. Perform. Food Grp., Inc.*,
  No. 15-cv-02390-HSG, 2017 WL 66874 (N.D. Cal. Jan. 6, 2017) ..........................................6

*Schlesinger v. Collins*,
  No. 19-cv-03483-EMC, 2019 WL 4674396 (N.D. Cal. Sept. 25, 2019) (J.,
  Chen) ..............................................................................................................6, 8, 9, 10

*Smith v. Oakley Transport, Inc.*,
  No. 19-cv-05854-EMC, 2020 WL 563076 (N.D. Cal. Jan. 30, 2020) (J., Chen) ........... *passim*

*Vu v. Ortho-Mcneil Pharm., Inc.*,
	602 F. Supp. 2d 1151 (N.D. Cal. 2009) ..............................................................................11, 12

**Statutes**

28 U.S.C. § 1391..............................................................................................................................5, 6, 7

28 U.S.C. § 1404................................................................................................................... *passim*

28 U.S.C. § 1406...................................................................................................................................7

California Business & Professions Code § 17200 ..........................................................................3

California Labor Code § 203 ...........................................................................................................3

California Labor Code § 226(a).......................................................................................................3

California Labor Code § 510, 1194, 1197, and 1998.......................................................................3

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ................................................................3, 8, 11

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether convenience, fairness, and the interests of justice require this proceeding be transferred to the District Court for the Central District of California pursuant to 28 U.S.C. § 1404.

## I. INTRODUCTION

Plaintiffs' attempt to litigate their claims against Defendant Charter Communications, LLC ("Charter") in this Court is an improper attempt at forum-shopping that should compel this Court to transfer this action to the Central District of California, the judicial district where the alleged facts and circumstances giving rise to their claims occurred, and where the only three Plaintiffs not bound by arbitration agreements reside, as do the other witnesses relevant to their claims. In fact, *all* of the original 16 Plaintiffs in this action reside and work for Charter in Ventura and Los Angeles County (i.e., the Central District). It was only in response to Charter notifying Plaintiffs of the above circumstances and threatening a motion to dismiss for improper venue that Plaintiffs amended their complaint to add two new Plaintiffs residing in the Northern District—*both of whom are bound by agreements to arbitrate their claims*. Plaintiffs' transparent attempt to forum shop and avoid *dismissal* for improper venue by *temporarily* adding two local Plaintiffs cannot salvage their forum shopping strategy, as there is no question that this case should be transferred to the Central District pursuant to 28 U.S.C. § 1404.

Indeed, every single factor Courts consider when determining whether to transfer litigation between federal courts—from the convenience of the parties and witnesses, to the location of evidence, to the local interest and court congestion—compels a transfer to the Central District of California. That analysis remains the same even if the two new Plaintiffs are not ultimately required to arbitrate their claims and instead proceed with this lawsuit, given Charter's miniscule operations in the Northern District and the fact that **84%** of Charter's California employees who Plaintiffs purport to represent are in the Central District. Accordingly, Charter requests the Court transfer this proceeding to the Central District of California for fairness and the convenience of the Parties.

## II. STATEMENT OF RELEVANT FACTS

**A.     Plaintiffs Who Live and Work in the Central District File Suit in This Court.**

The 16 original Plaintiffs, Michael Gonzales, Norbeto Alarcon, Alberto Arena, Felipe Becerra, Craig Bowlan, Ronald Flores, Dennis Harmon, Julio Hernandez, Gerald Llorence, Sergio Rocha, Michael Ralston, Ricardo Ramos, Raul Romero, Carlos Serpas, Raymond Ulmer, and Everardo Villa, are current or former Field Operations Maintenance Technicians ("Maintenance Techs") who worked

2
MEMO OF P&A ISO MOT. TO TRANSFER – CASE NO. 20-cv-02689-EMC

for Charter in the Central District of California.  (*See* Declaration of Seepa Lee ("Lee Decl.") ¶ 5.) All 16 original Plaintiffs also admittedly reside in the Central District of California.  (D.E. 1 ("Compl.") ¶¶ 7–23 (alleging Plaintiffs reside in Ventura and Los Angeles Counties).)

Despite having no connection whatsoever to the Northern District of California, on April 17, 2020, Plaintiffs initiated the instant lawsuit against Charter in this Court and alleged that venue was proper here.  (*See generally* Compl.)  Plaintiffs' premised their venue contention on the allegation that Charter had a "field operations maintenance technician office located in San[ta] Clara County at 8120 Camino Arroyo, Gilroy, California"—***even though none of the original Plaintiffs worked out of that office, or anywhere in the Northern District***.  (*Id* ¶¶ 3, 7–23; Lee Decl. ¶ 5.)  Plaintiffs did not allege any other facts suggesting that venue was proper in this Court.  (*See generally* Compl.)

In the Complaint, Plaintiffs brought causes of action against Charter under: (1) the Fair Labor Standard Act ("FLSA") for purported failure to pay minimum wage and overtime; (2) California Labor Code §§ 510, 1194, 1197, and 1998 for purported failure to pay minimum wage and overtime; (3) California Labor Code § 226(a) for purported failure to provide accurate wage statements; (4) California Labor Code § 203 for purported failure to provide all wages due upon termination; and (5) California Business & Professions Code § 17200 for purported unfair competition.  (*Id*. § I.)

Plaintiffs purport to bring the FLSA claim as a collective action on behalf of a class of:

> All individuals who were employed, or are currently employed, by one or more of the Defendants, as field operations maintenance technicians or any other similarly titled position at any time during the applicable statutory period.

(Compl. ¶ 39.)  However, and as detailed in Charter's concurrently-filed motion to dismiss and compel arbitration ("Motion to Compel"), all but three Plaintiffs (Michael Gonzales, Felipe Becerra, and Carlos Serpas) are required to individually arbitrate their claims against Charter pursuant to a mutual arbitration agreement they entered into with Charter during the course of their employments.  (*See generally* D.E. 22 ("MTC").)

Accordingly, on May 26, 2020, Charter requested that Plaintiffs who were bound to arbitrate their claims do so, and further requested that the remaining Plaintiffs consent to transfer this proceeding to the Central District of California where venue was proper.  (Declaration of Abigail Stecker Romero ("Romero Decl.") ¶¶ 2–3, Ex. A.)

**B.     Plaintiffs File an Amended Complaint to Add Two Plaintiffs From the Northern District.**

Instead of responding to Charter's requests regarding arbitration and transfer, Plaintiffs filed a First Amended Complaint ("FAC") on June 11, 2020. (D.E. 17 ("FAC").) The FAC does not add any new claims, theories or even facts. Instead, the FAC adds two new plaintiffs—Sting Funez (a current Maintenance Tech) and Artur Kosinski (a former Maintenance Tech)—both of whom allegedly reside and work (or worked) in the Northern District. (FAC ¶¶ 3, 14, 17.) Plaintiffs added these individuals in a transparent attempt to defeat Defendant's threatened motion to dismiss for improper venue.

However, as with 13 of the original Plaintiffs, and as detailed in Charter's Motion to Compel Arbitration, both Funez and Kosinski agreed to individually arbitrate their claims against Charter pursuant to a mutual arbitration agreement. (*See generally* MTC.) Thus, the only three Plaintiffs who can proceed in court against Charter (Gonzales, Becerra, and Serpas) have no connection whatsoever to the Northern District. Accordingly, Charter again requested that the Plaintiffs bound to arbitrate their claims do so, and that the remaining Plaintiffs consent to transfer this proceeding to the Central District. (Romero Decl. ¶ 4.) Plaintiffs refused. (*Id.* ¶ 5.)

**C.     Charter's Operations in California Are Based in the Central District.**

The vast majority of Charter's operations in California are in the Central District. Of the 8,935 employees Charter employs in California at 175 locations, **93%** (approximately 8,329 persons) are based in one of Charter's 157 locations in the Central District. (Lee Decl. ¶¶ 7–8.) In contrast, Charter employs ***merely .01% of its California workforce*** (approximately 103 persons) in the Northern District, out of only three physical locations. (*Id.* ¶¶ 8–9.) And, of its entire nationwide workforce, Charter employs only ***.001%*** (approximately 103 out of approximately 95,943 employees) in the Northern District. (*Id.* ¶¶ 7, 9.)

More specifically, of the 565 Maintenance Techs in California whom Plaintiffs purport to represent, **84%** (approximately 477 persons) are based in the Central District and only **2%** (approximately 14 persons) are based in the Northern District.[1]  (*Id.* ¶ 10.) As to Maintenance Tech

---

[1] The remainder are based in the Southern and Eastern Districts of California.

Supervisors in California, 82% are based in the Central District and 2% are based in the Northern District. (*Id.* ¶ 11.) And of the 11 Maintenance Tech Managers in California, eight are in the Central District and only one is in the Northern District. (*Id.* ¶ 12.)

Thus, it is unsurprising that the 16 original Plaintiffs (including the only three Plaintiffs eligible to pursue their claims in federal court) work in the Central District, as do their Supervisors and Managers, who would be important witnesses in this case. (*Id.* ¶¶ 5, 10–12.) Indeed, a single supervisor in the Central District currently or previously supervised approximately 12 Plaintiffs. (*Id.* ¶ 11.) In addition, Plaintiffs' personnel files and other relevant records are physically stored in the Central District. (*Id.* ¶ 6.) Accordingly, there likely will be no relevant documents or witnesses located in the Northern District of California.

### III.  ARGUMENT AND CITATION OF AUTHORITY

**A.  Lawsuits May Be Transferred for the Convenience of Parties in the Interests of Justice.**

Pursuant to 28 U.S.C. § 1404, a trial court may transfer a lawsuit to an alternative district in which the action could have been initially brought to accommodate the "convenience of parties and witnesses" and "the interests of justice." 28 U.S.C. § 1404. This provision was intended to "place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Smith v. Oakley Transport, Inc.*, No. 19-cv-05854-EMC, 2020 WL 563076, at *1 (N.D. Cal. Jan. 30, 2020) (J., Chen) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

**B.  This Proceeding Could Have Initially Been Brought in Central District of California.**

Before considering whether convenience and fairness require the transfer of this proceeding to the Central District of California, this Court must determine whether Plaintiffs "could have filed the instant case" in the Central District at the outset. *Mitek Sys., Inc. v. U.S.A.A.*, No. 19-cv-07223-EMC, 2020 WL 1922635, at *3 (N.D. Cal. Apr. 21, 2020) (J., Chen). Here, that is unquestionably the case. Pursuant to 28 U.S.C. § 1391(b)(2), venue is appropriate where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Such is the case here, where the claims of all 16 Plaintiffs who originally filed this lawsuit arise ***entirely and exclusively*** from their employment with Charter in Ventura and Los Angeles Counties (where those Plaintiffs

also reside), which fall within the Central District of California. (*Supra* § II.A.) Indeed, the Central District of California was the ***only*** appropriate venue at the time the original Plaintiffs filed their lawsuit in this Court. (*Infra* § III.C.1.)

Accordingly, this action not only could have—but *should have*—been filed in the Central District of California. *See Perez v. Perform. Food Grp., Inc.*, No. 15-cv-02390-HSG, 2017 WL 66874, at *3 (N.D. Cal. Jan. 6, 2017) (holding "substantial part of the events or omissions giving rise to the claim occurred" in the Central District "given Plaintiff was employed exclusively in the Central District of California"); *Nyulassy v. Lockheed Martin Corp.*, No. 5:12–CV–1182 EJD, 2012 WL 2906572, at *2 (N.D. Cal. July 16, 2012) (holding "venue would have been proper" under Section 1391(b) in the district where plaintiff "resided and worked" for defendant). The Court may therefore consider whether to transfer this proceeding to the Central District.

**C.     All Section 1404 Factors Strongly Support Transfer to the Central District.**

Courts typically consider the following factors when determining whether to transfer an action: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum." *Smith*, 2020 WL 563076 at *2 (citations omitted); *Schlesinger v. Collins*, No. 19-cv-03483-EMC, 2019 WL 4674396 (N.D. Cal. Sept. 25, 2019) (J., Chen) (same) (citing *Vu v. Ortho-Mcneil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009)).

In cases like the present, where plaintiffs have engaged in forum shopping or chosen a forum with no connection to the underlying dispute, "the burden on the defendant is reduced and it is easier for the defendant to show that the balance of convenience favors transfer." *Gupta v. Perez*, No. 5:14–cv–01102 HRL, 2014 WL 2879743, *3 (N.D. Cal. June 24, 2014) (quoting *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 482 (D. Del. 1987)). Here, given the overwhelming evidence of Plaintiffs' forum shopping, the strong connection of this case to the Central District of California, and the lack of connection to the Northern District, the Section 1404 factors weigh not only heavily, but almost exclusively, in favor of transferring the case to the Central District. Indeed, every single one

of the eight factors relevant to transfer confirm Plaintiffs engaged in improper forum shopping and that this case must be transferred to the Central District of California.

**1.      Plaintiffs' Choice of Forum Was the Result of Improper Forum Shopping.**

The first Section 1404 factor, plaintiffs' choice of forum, is not entitled to deference where, as here, (1) there is evidence of forum shopping, (2) the operative facts did not occur within the forum, and (3) the case is representative in nature. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (connection to forum); *Metz v. The United States Life Ins. Co.*, 674 F. Supp. 2d 1141, 1146 (C.D. Cal. 2009) (representative action); *Carolina Cas. Co. v. Data Broadcasting, Co.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) (forum shopping).  The existence of all three elements confirm that this matter should be transferred to the Central District despite Plaintiffs' choice to file their lawsuit in the Northern District.

First, there is overwhelming evidence of forum shopping in this proceeding.  Plaintiffs filed the original Complaint in the Northern District even though venue was patently improper, as none of the original 16 Plaintiffs resided or worked in the Northern District and none of their claims arose from conduct in the Northern District. (*Supra* § II.A.)  Moreover, because Charter's operations in the Northern District are negligible, venue was also improper under 28 U.S.C. § 1406 as the Northern District did not have either general or specific personal jurisdiction over Charter.  *See* 28 U.S.C. § 1391(b) (venue proper where defendant "resides" or where "a substantial part of the events or omissions giving rise to the claim occurred"); 28 U.S.C. § 1391(c) (defendant "resides" in "judicial district in which it is subject to personal jurisdiction with respect to the civil action in question"); *see also Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242–43 (9th Cir. 1984) (no personal jurisdiction where plaintiff's claims "unrelated" to forum's activities and defendant had minimal operations in forum; recognizing that even a "substantial sales force" within the forum is insufficient to confer general jurisdiction).

When Charter brought these facts to Plaintiffs' attention, they refused to transfer this proceeding to the Central District.  Instead, Plaintiffs doubled-down on their forum shopping strategy by adding two new Plaintiffs who worked and lived in the Northern District.  In such scenarios, Plaintiffs' abuse of the judicial system cannot be ignored and their initial choice of forum is given no

deference. *See Ferrick v. Spotify USA Inc.*, No. 15-09929 BRO, 2016 WL 11623778, at *4 (C.D. Cal. Oct. 26, 2016) ("***The Court finds that this late addition of Gerencia—particularly as Plaintiffs added Gerencia after Defendant had already placed them on notice of its desire to transfer the proceeding—as a named plaintiff in what appears to be an attempt to cure improper venue creates, at the very least, a concern that Plaintiffs may be engaged in forum shopping.***") (emphasis added); *see also Forrand v. Fed. Exp. Corp.*, 2008 WL 276389,*3 (N.D. Cal. 2008) ("[B]ecause transfer of this case to the Central District of California would serve to discourage the type of forum shopping that Plaintiffs have engaged in, the interest of justice also weighs heavily in favor of transfer.").

Second, the Northern District has **no connection** to the claims of the only three Plaintiffs who are not bound by arbitration agreements and are thus permitted to pursue litigation in court. (*Supra* § II.A.)  Indeed, all three of those Plaintiffs reside, work, and purportedly suffered harm in Ventura and Los Angeles Counties—not the Northern District. *See Lou*, 834 F.2d at 739 (holding plaintiff's choice of forum "commands only minimal consideration where she is not a resident of the district where she instituted suit, the operative facts have not occurred within the forum, and the forum has no particular interest in the parties or the subject matter"); *Mitek*, 2020 WL 1922635 at *4 (J., Chen) (according "little deference" to plaintiff's choice of forum where plaintiff "cannot claim that the instant case has a significant connection to this District").

Third, the fact that Plaintiffs have brought an FLSA collective action further renders their choice of forum inconsequential to this proceeding. *See Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal.2013) ("[I]n class actions, a plaintiff's choice of forum is often accorded less weight."); *Schlesinger*, 2019 WL 4674396 at *4 (J., Chen) ("deference is limited because [plaintiff] has brought a putative class action") (citation omitted).

Therefore, Plaintiffs' choice of forum in this proceeding does not weigh against transfer of this proceeding to the Central District, where it should have been brought in the first instance. *See Harris v. LSP Prods. Grp., Inc.*, No. CV 18-3091 FMO, 2018 WL 6264993, at *5 (C.D. Cal. Nov. 13, 2018) ("Although plaintiff filed the instant action in this District, her choice is afforded considerably less weight because the majority of the operative facts did not occur here, the case is a class action, and there is evidence that she engaged in forum shopping."); *Ferrick*, 2016 WL 11623778 at *4

("Because the Court finds that the named plaintiffs represent a class and there is some indication of forum shopping, the Court accords Plaintiffs' choice of forum no deference in this case.").

### 2. The Central District Is More Convenient for the Parties.

The second Section 1404 factor, convenience of the Parties, weighs heavily in favor of transfer. Here, the only three Plaintiffs who may pursue their claims against Charter in court reside and work in Ventura and Los Angeles Counties, within the Central District (as do the 13 other original Plaintiffs). (*Supra* §§ II.A–B; Mot. to Compel.) In addition, Charter's operations in California are based in the Central District. (*Supra* § II.C.) Thus, all depositions, mediations, hearings, and the like, will be more convenient if located in the Central District. Regardless, at minimum, litigating this case in the Central District would be "much more convenient for defendant, and no less convenient for plaintiff" and it should accordingly be transferred. *Harris*, 2018 WL 6264993 at *3.[2]

### 3. The Central District Is More Convenient for Witnesses.

The third Section 1404 factor, convenience to witnesses, is "often recognized as the most important factor to be considered." *Metz*, 674 F. Supp. 2d at 1147. This factor strongly supports transfer here.

Nearly every single witness in this proceeding will be located in the Central District of California. For example, 84% of the 565 Maintenance Techs Plaintiffs purport to represent in California work (and likely reside) in the Central District of California. *See Smith*, 2020 WL 563076 at *2 (J., Chen) (transferring to defendant's preferred Florida forum where 42% of putative class located in Florida); *supra* § II.C. They will likely provide testimony regarding their work schedules, day-to-day activities, use of "bucket trucks," related policies, and compensation. (*See generally* FAC ¶ 25–48 (factual allegations).) Similarly, 82% of those who supervised the Maintenance Techs—including one individual who supervises or supervised 12 Plaintiffs—are located in the Central District. (*Supra* § II.C.) Those supervisors will likely provide testimony regarding their expectations of Maintenance Techs, their observations of the work schedules and day-to-day activities of Maintenance Techs, and the implementation of related policies. *See Schlesinger*, 2019 WL 4674396

---

[2] Both Parties' counsels have California offices in the Central District and not the Northern District.

at *5 (J., Chen) (transferring proceeding to Florida where, *inter alia*, convenience of witnesses "weigh[ed] strongly" in defendant's favor because claim involved how defendant "runs his business" in Florida). In contrast, a mere 2% of Charter's California Maintenance Techs work in the Northern District. (*Supra* § II.C.) Thus, there likely are no critical witnesses to this proceeding in the Northern District. *See Mitek*, 2020 WL 1922635 at *5 (transferring where "there is no indication that there are critical nonparty witnesses in this District").

Accordingly, because it is more convenient for nearly all (if not all) witnesses for this lawsuit to proceed in the Central District, this case should be transferred to that district. *See Metz*, 674 F. Supp. 2d at 1148 ("[B]ecause the majority of potential witnesses are in the New York area, and the only party or witness known to date that is located in California is Plaintiff, the convenience to witnesses weighs in favor of transferring this action to the Southern District of New York."); *Ferrick*, 2016 WL 11623778 at *5 (transferring proceeding where "it appears that the majority of witnesses will find the Southern District of New York a more convenient venue").

### 4. The Majority of Relevant Evidence is Located in the Central District.

The fourth Section 1404 factor, ease of access to the evidence, also supports transfer. Here, the relevant records regarding Plaintiffs and their activities, as well as the personnel records of 84% of the California Maintenance Techs they purport to represent, are located in the Central District.[3] *See Schlesinger*, 2019 WL 4674396 at *5 (J., Chen) (transferring proceeding to Florida where "the bulk of documentary evidence will likely be in Florida, where [defendant] resides"); *see also Smith*, 2020 WL 563076 at *2 (J., Chen) (transferring proceeding to Florida because "the evidence is far more focused in Florida than in California" where majority of class lived *closer* to Florida than California); *supra* § II.C. Plaintiffs cannot identify any key evidence—let alone evidence relevant to the claims of the only three Plaintiffs who can pursue this litigation—in the Northern District. *Metz*, 674 F. Supp. 2d at 1149 (ease of access weighs in favor of transfer where plaintiff failed to specify sufficient evidence in his chosen venue). Accordingly, this factor additionally supports transfer.

---

[3] To the extent some documents are available electronically, that does not weigh against transfer to the Central District. *See generally Metz*, 674 F. Supp. 2d at 1149 ("ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations").

Case 2:20-cv-08299-SB-AS   Document 25   Filed 07/02/20   Page 16 of 17   Page ID #:221

### 5. The Central District is Familiar with Applicable Law.

The fifth Section 1404 factor, familiarity of each forum with the applicable law, supports transfer. Here, there can be no dispute that judges in the Central District of California are familiar with the FLSA, Labor Code and Unfair Competition claims at issue in this proceeding. Thus, Plaintiffs would face no prejudice in having the Central District adjudicate their claims and this factor weighs in favor of transfer. *See Vu*, 602 F. Supp. 2d at 1157 (recognizing "there is no evidence that [the Northern District] is more favorable than the Central District" as to "familiarity with plaintiffs' claims"); *Smith*, 2020 WL 563076 at *2 (J., Chen) (transferring proceeding to out-of-state venue because "excellent judges" in that state "can apply California law").

### 6. Consolidation with Other Claims is Irrelevant.

The sixth Section 1404 factor, feasibility of consolidation with other claims, does not weigh against transfer because there are no other claims pending in the Northern District with which this proceeding should be consolidated. *See Vu*, 602 F. Supp. 2d at 1157 (recognizing "there is no evidence that [the Northern District] is more favorable than the Central District" as to "feasibility of consolidation").

### 7. The Central District Has a Greater Local Interest in the Controversy.

The seventh Section 1404 factor, local interest in the controversy, strongly supports transfer. Here, the three Plaintiffs who can pursue their claims in court (*and* 16 of the 18 total Plaintiffs) reside, work, and were purportedly harmed in the Central District by actions that allegedly occurred in the Central District. (*Supra* §§ II.A–B.) Likewise, over 84% of the other California Maintenance Techs Plaintiffs purport to represent work in the Central District. (*Supra* § II.C.) In contrast, only a mere 2% of Charter's California Maintenance Techs work in the Northern District. (*Supra* § II.C.) Thus, the record confirms the Central District has a much stronger interest in this proceeding than the Northern District, and the case should be transferred. *See Vu*, 602 F. Supp. 2d at 1157 ("[W]hile the Central District's local interest in the controversy may not be substantially stronger than [the Northern District's], it nevertheless remains stronger because the events at issue took place there."); *Harris*, 2018 WL 6264993 at *4 (recognizing "local interest" weighs in favor of transfer where "locus of

11
MEMO OF P&A ISO MOT. TO TRANSFER – CASE NO. 20-cv-02689-EMC

operative facts" occur in defendant's preferred venue) (citing *U.S. ex rel Cody v. Mantech Int'l Corp.*, No. CV 13-9173 FMO, 2016 WL 10537807, at *5 (C.D. Cal. Feb. 9, 2016)).

### 8. The Central District Is Less Congested and Provides an Equivalent Path to Trial.

The seventh Section 1404 factor, relative court congestion and time to trial in each forum, though it is given "little weight in this circuit," weighs in favor of transfer. *Baker v. Bayer Healthcare Pharma., Inc*., No. 13–cv–00490–THE, 2015 WL 4456085, *4 (N.D. Cal. 2015) (citing *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1134 (C.D. Cal. 2009)).

In the Central District of California, the median time from "filing to disposition" of civil proceedings is 4.6 months and the median time from "filing to trial" is 22.5 months. (Romero Decl. ¶ 6, Ex. C (Judicial Caseload Profile at 69).) In the Northern District of California, the median time from "filing to disposition" of civil proceedings is 8.2 months and the median time from "filing to trial" is 22 months. (*Id.* at 67.) Given these statistics, the Central District is more than capable of presiding over this lawsuit without prejudice to Plaintiffs and the matter should be transferred. *See Vu*, 602 F. Supp. 2d at 1157 (transferring proceeding after recognizing "there is no evidence that [the Northern District] is more favorable than the Central District" as to "court congestion"); *Baker*, 2015 WL 4456085 at *4 (transferring proceeding to Central District because it had fastest median time from filing to disposition); *see also Harris*, 2018 WL 6264993 at *5 (transferring proceeding despite similar docket congestion).

### IV.  CONCLUSION

Every Section 1404 factor confirms this litigation should proceed, for the convenience of the Parties and in the interests of justice, in the Central District rather than the Northern District. Accordingly, Charter respectfully requests that the Court transfer this lawsuit to the District Court for the Central District of California.

DATED: July 2, 2020                                        KABAT CHAPMAN & OZMER LLP

                                                           By: */s/ Abigail Stecker Romero*
                                                               Abigail Stecker Romero
                                                           *Counsel for Defendant*