1  Joseph W. Ozmer II (SBN 316203)
2  jozmer@kcozlaw.com
   Abigail Stecker Romero (SBN 284534)
3  aromero@kcozlaw.com
   KABAT CHAPMAN & OZMER LLP
4  333 S. Grand Avenue, Suite 2225
5  Los Angeles, CA 90071
   Telephone: (213) 493-3980
6  Facsimile: (404) 400-7333
7
8  Attorneys for Defendant
9  (continued on following page)
10
11
                 **UNITED STATES DISTRICT COURT**
12               **CENTRAL DISTRICT OF CALIFORNIA**
13
14
15  MICHAEL GONZALES, et al.,            Case No.: 2:20-cv-08299-SB-AS
16                    Plaintiff(s),      **JOINT CASE MANAGEMENT
17       v.                             STATEMENT AND [PROPOSED]
                                        ORDER**
18  CHARTER COMMUNICATIONS, LLC,
19                                       Hon. Stanley Blumenfeld, Jr.
20                    Defendant.
                                         Fac Filed: June 11, 2020
21
22                                       **CASE MANAGEMENT
                                        CONFERENCE**
23                                       Date:        November 9, 2020
                                         Time:        10:30 a.m.
24                                       Courtroom:   6C
25
26
27
28

- 1 -

Michael A. Velthoen (SBN 187909)
mvelthoen@fcoplaw.com
Leslie A. McAdam (SBN 210067)
lmcadam@fcoplaw.com
Max R. Engelhardt (SBN 310968)
mengelhardt@fcoplaw.com
FERGUSON CASE ORR PATERSON LLP
1050 S. Kimball Road
Ventura, California 93004
Telephone: (805) 659-6800
Facsimile: (805) 659-6818

Attorneys for Plaintiffs

Michael A. Strauss (SBN 246718)
mike@strausslawyers.com
Aris E. Karakalos (SBN 240802)
aris@strausslawyers.com
STRAUSS & STRAUSS, APC
121 N. Fir St., Suite F
Ventura, California 93001
Telephone: (805) 641-6600
Facsimile: (805) 641-6607

Attorneys for Plaintiffs

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER - CASE NO. 2:20-cv-08299-SB-AS

The Parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to Federal Rules of Civil Procedure 16, 26 and the Scheduling Conference Notice (D.E. 51).

1.    Statement of the Case

**Plaintiffs' Statement:** Plaintiffs worked for Charter as "Field Operations Maintenance Technicians" ("Maintenance Techs").  Maintenance are, among other things, responsible for responding to emergency outages in Charter's cable, internet, and telecommunication services infrastructure.  Response time to these emergencies is a critical aspect of the job as a single outage may affect tens of thousands of Charter's customers.

As Maintenance Techs, Plaintiffs were subjected to Charter's company-wide "on-call" policy (the "On-Call Policy").  The stated purpose of the On-Call Policy was to ensure that Charter's network and systems functioned reliably at all times.  To that end, Charter required Plaintiffs to work on-call for week-long periods in order to respond to plant and service emergencies outside of Plaintiffs' regular work schedule. Plaintiffs were assigned 24-hour a day on-call duty according to a rotating schedule such that each of the Plaintiffs worked on-call approximately every four to five weeks. For those weeks, Plaintiffs worked 128 on-call hours in addition to their regular full-time 40-hour workweek.

Charter and Plaintiffs agreed that on-call duty was compensable work. Specifically, Charter paid Plaintiffs "on-call pay," which was flat-rate ($245.00) for each week-long on-call period.  Charter's agreement to pay Plaintiffs and the collective class members "on-call pay" was a tacit admission by Charter that the on-call time was compensable as working time under the FLSA and the California Labor Code.  Further, while working on-call, Charter subjected Plaintiffs and all other Maintenance to the same numerous unreasonable and excessive restrictions, including restrictions which required them to effectively be anchored to large Charter-owned "bucket trucks"; requiring them to perform safety and maintenance checks on the bucket trucks; various

driving restrictions; restrictions on accessibility via cell phone; uniform requirements, physical/mental condition requirements, and response time and reporting time restrictions.  Thus, for the week-long periods that Plaintiffs worked on-call, the time that they worked on-call was in excess of 40 hours per week. By paying only flat-rate compensation of $245 per week, Charter violated the FLSA and the California Labor Code.  Also, pursuant to Charter's company policy, on a daily basis and including days on which Plaintiffs do not work one of their regular workweek shifts, Plaintiffs must conduct safety and maintenance inspections of the bucket trucks. When Plaintiffs drive the bucket trucks for personal purposes outside of their regular workweek shifts, Plaintiffs must conduct extensive safety inspections of the bucket trucks any time the buckets trucks have been left unattended or any time the bucket trucks are driven in reverse.  This is also work in excess of 8 hours per day and/or 40 hours per week for which overtime compensation was due, but not paid.

**Defendant's Statement:** Plaintiffs are three current or former Maintenance Technicians ("Maintenance Techs") who worked for Defendant in the Santa Monica, Palmdale, and Oxnard areas of California.

Plaintiffs allege that Defendant required them to work "on call," subjecting them to unreasonable geographic and time constraints, without paying them minimum wage and overtime for that "on call" work.  They also allege Defendant required them to drive their "bucket trucks" home every day and subjected them to "intense" restrictions regarding their use of the bucket trucks, which allegedly "exacerbated" on-call constraints.  Based on those allegations, Plaintiffs assert various claims against Defendant under the FLSA and California Labor Code.  They bring the FLSA claim on behalf of a class of other Maintenance Techs throughout the Country.

Defendant denies it violated the FLSA or California Labor Code.  While Defendant did require some Maintenance Techs to work "on call," it properly compensated them for all such on-call work.  Defendant also did not require Plaintiffs to drive their bucket trucks home every day, but rather permitted them to do so for their

own convenience.  Moreover, with respect to Plaintiffs' collective action allegations, Defendant's relevant practices differed throughout the Country.

Defendant anticipates the principle factual disputes in this matter will concern: (1) the requirements of Defendant's on-call policy as to Plaintiffs; (2) Defendant's compensation of Plaintiffs; (3) Defendant's policies regarding use of bucket trucks; and (4) the lack of uniformity of the material policies or practices at issue across the Country.

2.   <u>Subject Matter Jurisdiction</u>

The Parties agree this Court has federal question subject matter over Plaintiffs' FLSA claims and supplemental jurisdiction over Plaintiffs' remaining state-law claims.

3.   <u>Legal Issues</u>

The Parties anticipate the following legal issues will need to be resolved in this proceeding:

- Whether Defendant paid Plaintiffs the appropriate overtime required by the FLSA.

- Whether Defendant paid Plaintiffs minimum wage and overtime as required by California Labor Code §§ 510, 1194, 1197, and 1998.

- Whether, based on Plaintiffs' claim that Defendant failed to pay required minimum wage and overtime, Defendant: (1) paid required wages upon separation of certain Plaintiffs' employment as required by California Labor Code § 203; (2) provided accurate wage statements as required by California Labor Code § 226(a); (3) engaged in unfair competition under California Business & Professions Code § 17200.

- Whether Plaintiffs may pursue a collective action under the FLSA, on a nationwide basis or otherwise.

- Whether Plaintiffs who are not subject to an arbitration agreement are similarly situated  to putative collective class members who are subject to such agreements.

- Whether Plaintiffs or putative collective class members are exempt from the requirements of the FLSA and/or California Labor Code.

- Whether Defendant's actions or omissions were taken in good faith, with reasonable grounds for believing their lawfulness, and without willfulness.

- Any other legal issues outlined in Defendant's affirmative defenses or that may arise during the course of the Parties' litigation.

4.    <u>Parties, Evidence, Etc.</u>

The Parties currently anticipate the following witnesses may give testimony in this matter:

- Plaintiff Michael Gonzales;

- Plaintiff Felipe Becerra;

- Plaintiff Carlos Serpas;

- Former plaintiffs Sergio Rocha, Norbeto Alarcon, Alberto Arena, Craig Bowlan, Ronald Flores, Sting Funez, Dennis Harmon, Julio Hernandez, Artur Kosinski, Gerald Llorence, Michael Ralston, Ricardo Ramos, Raul Romero, Raymond Ulmer, and Everardo Villa;

- Opt-in members of the FLSA collective (if any);

- Corporate representative of Defendant;

- Michael Rachan;

- Other individuals to be identified by the Parties in discovery.

The Parties currently anticipate the following evidence may be introduced in this matter:

- Any documents produced by the Parties or third parties in discovery;

- Documents evidencing Defendant's "on call" policies and/or practices;

- Documents evidencing Defendant's policies and/or practices for use of "bucket trucks;"

- Certain compensation records for Plaintiffs and potential opt-in members of the FLSA collective (if any);

- Certain compensation records for Plaintiffs and potential opt-in members of the FLSA collective (if any);

- Certain time records for Plaintiffs and potential opt-in members of the FLSA collective (if any); and

- Certain personnel records for Plaintiffs and potential opt-in members of the FLSA collective (if any).

5.   Damages

**Plaintiffs' Position:**   Plaintiffs, individually and on behalf of the putative collective, seek unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act (FLSA) (29 U.S.C. §§ 206(a)(1), 207(a)(1), and 216(b)).  In addition, Plaintiffs, in their individual capacities only, seek unpaid minimum and overtime wages pursuant to California Labor Code §§ 510, 1194, 1197, and 1998, as well as penalties under California Labor Code § 226(a) for failure to provide accurate, itemized wage statements.  In addition, pursuant to California Business and Professions Code § 17200 *et seq.*, Plaintiffs seek restitution and injunctive relief with regard to their individual claims under the California Labor Code.  Damages shall be calculated in accordance with the above-referenced sections of the FLSA, California Labor Code.

Plaintiffs seek the above amounts, and interest thereon, going back four years from the filing of the complaint (April 17, 2016) under California law and going back three years from the filing of the complaint (April 17, 2017) under the FLSA. The exact amount of the wages owed at this time is unknown. The precise figure will depend on how many overtime and double-time hours constitute "hours worked" under the applicable law and regulations, for the relevant time-period. Defendant is in possession of information concerning the hours worked and the applicable rates of pay, so Plaintiffs cannot accurately calculate the damages for this element of their claims at this time.

California Plaintiffs also seek penalties under Labor Code sections 203 and 226. The precise amount of Labor Code penalties will depend on the number of violations that have occurred within the statutory period(s), which in turn hinges on the number of resigned/terminated Plaintiffs and future opt-ins, the number of workweeks worked,

1   and related variables within the relevant time period.  Defendant is in possession of
2   information concerning the resigned/terminated employees, hours worked, paystubs
3   issued, so Plaintiffs cannot accurately calculate the damages for these potential claims,
4   at present.  Plaintiffs also seek attorneys' fees and costs, as authorized by law.

5       Subject to the above limitations, each of the Plaintiffs are, in a good faith attempt
6   at valuing their claims, estimating their damages to be as follows:

7       1.   Unpaid Wages for CA Plaintiffs:

8       Damages will vary for each Plaintiff depending on the length of time they worked
9   in the statutory period, the number of "on-call" shifts they were assigned to work; and
10  their rates of pay for each week they worked "on-call" shift. Assuming all 24 hours per
11  day during on-call weeks are compensable hours worked, using an hourly rate of
12  $30.00, and discounting the $245.00 they received for on-call shifts, each Plaintiff is
13  owed approximately **$7,135.00** per on-call week, or **$71,350.00** per year (plus
14  attorneys' fees and costs) assuming an "on call" frequency of 10 weeks each year.
15  Apart from, and in addition to the unpaid wages for hours worked while "on-call,"
16  Plaintiffs seek unpaid wages for hours worked performing required maintenance and
17  safety checks on bucket trucks outside of Plaintiffs' regularly scheduled shifts, which
18  amounts will vary for each Plaintiff.

19      2.   Unpaid Wages for FLSA Plaintiffs:

20      Damages will vary for each Plaintiff depending on the length of time they worked
21  in the statutory period, the number of "on-call" shifts they were assigned to work; and
22  their rates of pay for each week they worked "on-call" shift. Assuming all 24 hours per
23  day during on-call weeks are compensable hours worked, using an hourly rate of
24  $30.00, and discounting the $245.00 they received for on-call shifts, each Plaintiff is
25  owed approximately **$5,515.00** per on-call week, or **$55,150.00** per year (plus
26  attorneys' fees and costs) assuming an "on call" frequency of 10 weeks each year.
27  Apart from, and in addition to the unpaid wages for hours worked while "on-call,"
28  Plaintiffs seek unpaid wages for hours worked performing required maintenance and

1  safety checks on bucket trucks outside of Plaintiffs' regularly scheduled shifts, which

2  amounts will vary for each Plaintiff.

3        3.  Liquidated Damages for FLSA Plaintiffs:

4        Equal to the amount of unpaid wages under the FLSA.

5        4.  Paystub Penalties for CA Plaintiffs:

6        $50 for the first pay period in which a violation occurred and $100 for each pay

7  period thereafter in which a violation occurred, capped at $4,000. Assuming an average

8  of 15 pay periods in the statutory period (one-year) for each Plaintiff (as of now), these

9  damages are approximately **$1,450.00** (plus attorneys' fees and costs).

10       These above are preliminary rough estimates subject to change based on either

11 erroneous assumptions, inadvertent miscalculation, overlooked damages or penalties,

12 as well as based on actual time and pay records that are in the possession of Defendants

13 and which will be requested in discovery.

14       **Defendant's Position:** Plaintiffs are not entitled to any damages whatsoever.

15 6.  Insurance

16       Defendant is not aware of any applicable insurance agreement at this time.

17 7.  Procedural Motions

18       •  Plaintiffs' anticipated unopposed motion for leave to file a Second Amended

19          Complaint to add a single claim for Violations of the Private Attorneys

20          General Act of 2004 ("PAGA") – Defendant has indicated a willingness to

21          stipulate to the filing of this Second Amended Complaint, so it likely will

22          not be filed in the form of a motion.

23

24 8.  Substantive or Dispositive Motions

25       •  Plaintiffs' Motion for Conditional Certification of FLSA Collective Action

26          (Currently pending)

27       •  Motion to Compel Disclosure of Identification of PAGA Class Members

28          (unless the parties can agree on a notice process).

1  • Plaintiffs' Motion for Certification of FLSA Collective Action.

2  • Defendant's Motion for Summary Judgment.

3  • Defendant's Motion for Decertification of FLSA Collective Action.

4  9.  Manual for Complex Litigation

5  The Parties do not believe the procedures of the Manual for Complex Litigation

6  should be used at this time.

7  10.  Status of Discovery

8  The Parties have exchanged initial disclosures.

9  Defendant has served Requests for Production and Interrogatories on Plaintiffs.

10  Plaintiffs responded to the above-mentioned written discovery on September 4, 2020.

11  Plaintiffs intend to serve written discovery on Defendant in November 2020.  The

12  Parties anticipate conducting depositions after the Parties exchange written discovery

13  responses and document productions.

14  Defendant anticipates conferring with Plaintiffs regarding certain deficiencies in

15  their discovery responses in November 2020 and anticipates the Parties will be able to

16  resolve Defendant's concerns without Court intervention.  Aside from the matters

17  addressed in the Parties' briefing on Plaintiffs' motion for conditional certification of

18  a FLSA collective, the Parties do not have any discovery disputes at this time.

19  11.  Discovery Plan

20  The Parties anticipate the scope of discovery will encompass the legal and

21  factual disputes set forth *supra*.

22  The Parties do not anticipate any modifications of the discovery rules set forth

23  in the Federal Rules of Civil Procedure will be necessary.

24  The Parties anticipate entering into a stipulated protective order and will address

25  the exchange of ESI should the need arise.

26  The Parties have already exchanged initial disclosure and do not request any

27  changes to the disclosures mandated b Fed. R. Civ. P. 26(a).

28

12.   Discovery Cut-Off

The Parties propose a fact discovery cut-off of June 25, 2021.  This date is the final date for *completion of discovery*, including resolution of all discovery motions.

13.   Expert Discovery

The Parties propose the following expert discovery dates:

| Affirmative Expert Reports | July 9, 2021 |
|---|---|
| Rebuttal Expert Reports | July 30, 2021 |
| Close of Expert Discovery | August 20, 2021 |

14.   Settlement and ADR

The Parties have not engaged in settlement discussions.

The Parties agree that ADR efforts will likely be more fruitful, if at all, after the Parties have engaged in further discovery.  The Parties propose private mediation to be scheduled within 30 days after the close of discovery.

15.   Trial Estimate

Plaintiffs have demanded a jury trial.  The Parties estimate a trial length of five to seven days.

16.   Trial Counsel

**Plaintiffs**: Aris E. Karakalos and Max R. Engelhardt

**Defendant**: Joseph W. Ozmer, II and Abigail Stecker Romero

17.   Independent Expert or Master

The Parties agree this case is not suitable for reference to an expert or special master.

18.   Schedule Worksheet

*See* Attachment A.

1    The Parties also stipulate and propose specific deadlines for dispositive and

2    *Daubert* motions in the Schedule Worksheet.

3    19.   Magistrate Judge

4    The Parties do not consent to have a magistrate judge conduct all further

5    proceedings.

6    20.   Other Issues

7    The Parties anticipate submitting a stipulated protective order to the Court.

8    The Parties agree to exchange service of documents via email.

9    Plaintiffs have proposed to conduct all depositions via Zoom, to which

10   Defendant has voiced a preference for in-person depositions to the extent possible.

11   Plaintiff would like definitive guidance on how depositions should be conducted.

12   Given the fluidity of the COVID-19 situation, Defendant believes it would be

13   premature to make binding decisions regarding the method of depositions at this date,

14   and that the Parties should confer regarding the appropriate method closer to the date

15   of those depositions.

16   DATED: November 2, 2020

17   FERGUSON CASE ORR PATERSON LLP   KABAT CHAPMAN & OZMER LLP

18

19   By: */s/ Max R. Engelhardt*          By: */s/ Abigail Stecker Romero*

20       Aris E. Karakalos                     Joseph W. Ozmer II

21       Max R. Engelhardt                     Abigail Stecker Romero

22   *Counsel for Plaintiffs*                  *Counsel for Defendant*

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER - CASE NO. 2:20-cv-08299-SB-AS

1

[PROPOSED] **CASE MANAGEMENT ORDER**

2          The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED

3    ORDER is approved as the Case Management Order for this case and all parties shall

4    comply with its provisions. In addition, the Court makes the further orders stated

5    below:

6

7

8    IT IS SO ORDERED.

9    Dated: _____    _____

10                               UNITED STATES DISTRICT/MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTESTATION**

2        Defendant, as the filing party, hereby attests that signatory Max R. Engelhardt,

3  on behalf of Plaintiffs, concurs in this document's content and the filing of this

4  document.

5

6                                      */s/ Abigail Stecker Romero*

                                       Abigail Stecker Romero

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER - CASE NO. 2:20-cv-08299-SB-AS