UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GONZALES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHARTER COMMUNICATIONS, LLC, et al., <br><br> Defendants. | Case No. 2:20-cv-08299-SB-AS <br><br><br> FINDINGS OF FACT AND CONCLUSIONS OF LAW |

    Plaintiffs brought wage and hour claims arising from their employment with Defendant Charter Communications, LLC (Charter) as maintenance technicians (MTs). The Second Amended Complaint (SAC), the operative pleading, named four plaintiffs. Dkt. No. 77. After three of those plaintiffs were voluntarily dismissed, Dkt. Nos. 100, 166, and the Court partially granted Charter's motion for summary judgment, Dkt. No. 138, all that remained in this case were Plaintiff Michael Gonzales's state-law claims arising from the so-called "circle of safety" (COS) checks that he and other MTs have performed off the clock when they used a company truck for personal reasons while they were on call. The parties presented three such claims for trial: (1) failure to pay the minimum wage for the time Gonzales spent performing these COS checks, (2) failure to provide accurate wage statements for failure to include this time, and (3) violations of California's Private Attorneys General Act (PAGA) (Cal. Lab. Code § 2698 et seq.) related to these claims. Dkt. Nos. 167, 172.

1

The parties agreed to a bench trial. Dkt. No. 163. With the consent of the parties (Dkt. No. 188), the Court bifurcated the trial into two phases: (1) whether Charter is liable for Gonzales's individual claims (the first two claims above), and (2) whether Charter is liable for Gonzales's PAGA claim (the third claim above). *Id*. The Court held a bench trial on the first phase on January 3, 2023. Dkt. No. 196. Having heard the evidence presented by the parties and weighing credibility, the Court issues the findings of fact and conclusions of law as set forth below.

Findings of Fact

1. Plaintiff Michael Gonzales works as an MT for Charter, a cable provider. As an MT, Gonzales is responsible for maintaining Charter's network, which includes handling outages, repairs, and system upgrades.

2. Gonzales typically works five consecutive days followed by two days off. He works eight-hour days and is paid an hourly wage of $43.73. In addition, Gonzales is periodically scheduled to be "on call" to respond to outages and other emergencies outside his regular shift. The on-call duty is usually for a seven-day period and occurs every four-to-six weeks.

3. For every on-call day, Gonzales is paid a daily amount of $35 regardless of whether he is called out to complete an assignment. If called out for an assignment, he is additionally paid for the time spent working while on call. Under Charter's On-Call Policy, when employees are called out to complete an assignment while on call, they are paid "from the time they are contacted to work until the assignment is complete, including the time the employee spends traveling to or from a specific job site or Charter location." Ex. 7, at 3. There is a minimum payment for two hours of work for a call-out assignment even if the assignment takes less than two hours to complete. *Id*. at 2.

4. Under the On-Call Policy, an MT who is on call is required to respond within 15 minutes of being contacted about a work assignment and then is "expected to report to the site or Charter location as soon as reasonably practical after receiving the assignment." *Id*. An "employee who unreasonably fails to respond to a request to work may forfeit the on-call pay that day." *Id*.

5. Charter has issued Gonzales a vehicle called a bucket truck. The truck, which is 16 feet long and eight feet wide and weighs 16,000 pounds, is

equipped with an aerial lift, tool bins, and storage space to enable an MT to perform his work. Charter allows its MTs to take the truck home after their shift ends, allowing any MT who so elects to use the truck to commute to and from work. An MT who elects to take his assigned truck home while on call is also allowed to use the truck for non-business reasons. The On-Call Policy states: "In an effort to minimize response time when called to work, on-call employees are permitted to drive their assigned Charter vehicle during the period they are on call for non-business purposes." *Id*.

      6.     Gonzales almost always takes the bucket truck home with him, even when he is not on call, for a number of reasons. Doing so reduces his commuting time because he avoids needing to drive to and from a Charter facility to pick up and drop off his assigned truck. Doing so also has a financial benefit because he avoids paying for gas and limits wear and tear on his personal vehicle. When Gonzales is on call, he uses his bucket truck for various non-business purposes, including driving to a casino, to the grocery store, to the gym, and to visit friends.

      7.     If an MT chooses to drive his bucket truck while on call, he must comply with Charter's Motor Vehicle Policy, including its safety requirements. One of the safety requirements is called a "circle of safety" (COS) check that must be performed "before driving a vehicle that has been left unattended or prior to backing up." Ex. 6, at 6. The COS check, a brief visual inspection to make sure that the truck is safe to drive, is described as follows:

> This check includes looking under the vehicle and around the tires for children, animals or other potential hazards, signs of mechanical defects like dripping/puddle of water, oil, transmission or other fluids, and broken, loose, or missing vehicle components.

*Id*. Given that a bucket truck is approximately 18 inches off the ground, an MT can look under the vehicle when standing up (at an appropriate distance from the truck) or by easily bending over (if closer to the truck). While performing the check, an MT is also usually required to pick up two safety cones that are placed on the ground near the parked truck and place them in the back of the truck.

      8.     The COS check requires a minimal amount of time to conduct. The visual inspection begins when the MT starts walking to the truck (and has it in sight) and ends with a brief walk around it. An experienced MT is able to conduct

the check in 30 seconds. If there is an obstruction that has to be cleared or an item on the truck that has to be secured, the amount of time to perform the COS check might be extended for several seconds more. If there is a more significant problem with the vehicle spotted on the visual check (e.g., one requiring a repair), the MT is supposed to "clock in" and will get paid for the time spent addressing the problem.

9. Gonzales has worked as an MT for Charter for 10 years and has extensive experience performing COS checks. He testified that he performs approximately 14 COS checks in total when he is on call for a seven-day period. He also testified at trial that it takes him, on average, approximately 90 seconds to do the COS check and "a few seconds" more if he encounters a potential hazard under or near the truck or if he has to secure a loose component on the vehicle. He recalls one instance when it took him five minutes because there was an oil leak that he had to report to his supervisor and arrange for a repair. It is not clear if Gonzales sought compensation for the time he spent beyond the COS check. In any event, Gonzales acknowledged Charter never told him that he would not be paid for time spent on such maintenance issues.

10. Gonzales's trial testimony about the average length of time to conduct a COS check is at odds with his deposition testimony. At his deposition, he stated that the visual inspection took no longer than it takes to walk around the truck and pick up the cones. Based on the deposition testimony and other evidence in the case, including the description of the COS check, the photographs of the truck, and the testimony of Robert Howe and Alejandro Martinez (Charter employees with substantial prior MT experience), the Court does not believe that Gonzales spent more than 30 seconds on average to conduct the COS check.[1]

11. A violation of Charter's Motor Vehicle Policy, including failure to conduct the COS check when required, "may result in appropriate corrective action, up to and including termination of employment." Ex. 6, at 10. There is no evidence, however, of anyone ever having been disciplined for failing to conduct a COS check. Gonzales has never been disciplined; and Howe, who is currently an

---

[1] Gonzales also testified in his deposition that it would take only a couple of minutes when at work to conduct the daily vehicle inspection (which included, among other things, inspecting and testing the brakes, the steering, and the lights)—a more time-consuming process than a visual COS check. It is not credible that it would take only 30 seconds less to do the COS check.

MT supervisor, has never disciplined any MT for a violation. In practical terms, Charter does not actively enforce the policy but instead relies on the honor system—i.e., the good faith of its employees to comply with the safety requirement.[2]

Conclusions of Law

      1.     An employer must pay at least the minimum wage for all "hours worked." Cal. Code Regs. tit 8 § 11040. "Hours worked" includes (a) time during which an employee is subject to an employer's control and (b) time during which an employee is "suffered or permitted to work, whether or not required to do so." *Id*.

      2.     The issue presented here is whether the time that Gonzales spent while on call conducting COS checks before driving the bucket truck for non-business reasons constitutes compensable time worked. Plaintiff contends that the time is compensable based on the California Supreme Court's analysis in *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038 (2020).

      3.     In *Frlekin*, Apple Inc. had a worldwide "exit search" policy that required its employees at retail stores, before leaving work, to undergo a search of any packages, bags, or personal devices that they voluntarily brought to work for their personal convenience. *Id*. at 1042-43. The exit search detained an employee between five and 20 minutes—and on the busiest days up to 45 minutes—because the departing employee had to wait for a manager or security guard to be available to conduct the search. The California Supreme Court stated that the analysis to be applied in cases like the one in *Frlekin* is as follows:

> The level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative concerning whether an activity is compensable under the "hours worked" control clause. We also emphasize that whether an activity is required remains probative in determining whether an employee is subject to the employer's control. But, at least with

---

[2] At trial, Plaintiff suggested that Charter uses a GPS tracking system to closely monitor Gonzales and other MTs when they are driving their trucks. There is no substantial evidence of any such close monitoring.

5

> regard to cases involving onsite employer-controlled activities, the mandatory nature of an activity is not the only factor to consider. We conclude that courts may and should consider additional relevant factors—including, but not limited to, the location of the activity, the degree of the employer's control, whether the activity primarily benefits the employee or employer, and whether the activity is enforced through disciplinary measures—when evaluating such employer-controlled conduct.[3]

*Id*. at 1056 (cleaned up).

    4.    Applying the analysis to the facts before it, the California Supreme Court dismissed out of hand Apple's argument that the exit searches were voluntary because an employee chose to bring a personal package, bag, or device to work.  The court noted that it was obvious from the record that "Apple's exit searches are, as a practical matter, required"; and the court found that Apple's argument to the contrary "rings especially hollow" given that the search policy extends to any employee who brings an iPhone or other personal technology device to work.  *Id*. at 1054.  The court also found that other relevant factors favored a finding that the exit-search time was compensable, including the fact that the search occurred at the workplace, benefited only the employer, involved a significant degree of control, and was enforceable by disciplinary action.  *Id*. at 1056.

    5.    The *Frlekin* analysis, when applied to this case, leads to a different conclusion.  Unlike the decision whether to bring a cellphone or bag to work, the decision to use a bucket truck for non-business reasons while on call is a voluntary one.  This Court previously found on an undisputed summary judgment record that an MT was permitted but not required to take the truck home, much less required to drive the truck for non-business reasons while on call.  At trial, Gonzales testified that he made the choice to drive the truck home—and not just when he was on call.  For years, he has elected to regularly take the truck home and use it to commute to work, except on a few occasions.  He explained the substantial benefits in doing so, both in terms of saving time and money.

---

[3] This Court will assume without deciding that these factors also apply to an offsite activity because this assumption does not affect the outcome in this case.

6. The other *Frlekin* factors also cut against finding the COS check to be compensable. Significantly, the brief visual check occurs away from the workplace—at home, the casino, the grocery store, the gym, a friend's house, or wherever Gonzales choses to go for non-business reasons. Notwithstanding this indisputable fact, Gonzales argues that the COS check occurs at the workplace because his truck is his workplace. To borrow a phrase from *Frlekin*, this argument "rings especially hollow." An MT's workplace is not his truck, especially when it is being used for non-business reasons.

7. Nor can it be said that the COS check is solely for Charter's benefit. Of course, Charter has an interest in requiring its employees to drive its vehicles safely so as to avoid inadvertently hitting a person or animal with a 16,000-pound truck or causing other serious damage that was readily avoidable with a 30-second check. But so does Gonzales, who recognized at trial the obvious safety benefits of a COS check. He too has an interest in avoiding accidents. Even if he did not care about injuring others (and he undoubtedly does care), he certainly would want to avoid becoming entangled in litigation for causing serious harm by failing to take a quick and simple safety precaution that he believes to be "wise."[4]

8. The COS check also does not involve a significant degree of control. It is, to be sure, a requirement when applicable. A brief safety inspection before using a truck for non-business reasons, however, can hardly be characterized as exercising substantial control over an employee. And while Gonzales is subject to discipline for failing to comply, this factor has less weight in evaluating employer-controlled conduct when the employer is requiring an admittedly prudent safety practice that the employer does not practically police.

9. In short, the Court finds that Charter is not obligated under California law to compensate Gonzales for the time he spends conducting brief COS checks while using his bucket truck for non-business reasons while he is on call. This conclusion resolves his individual claims and precludes him from pursuing claims

---

[4] Despite the wisdom of conducting the safety check, Gonzales testified that he would not do it absent the requirement. This testimony is difficult to credit. But if it is true, the Court would find questionable his claim that he strictly complies with a requirement that is largely based on the honor system.

under the Private Attorneys General Act.  Consequently, there is no need for the second phase of the trial, which is vacated.  Judgment shall be separately entered.

Date: January 5, 2023

                                            Stanley Blumenfeld, Jr.
                                            United States District Judge